## Anderson et al. v. Commonwealth.

(Decided Nov. 4, 1938.)

M. JOSEPH SCHMITT and ALLEN SCHMITT for appellants.

HUBERT MEREDITH, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Ratliff—Reversing.

At the 1938 session of the General Assembly of Kentucky, it passed a resolution, known as House Resolution No. 49, authorizing the appellants, Fannie B. Anderson, Sally B. Jones, and Ada Hathaway, to sue the Commonwealth of Kentucky to recover of it damages for personal injuries received by them as result of a collision between an automobile in which they were riding and an automobile truck owned by the Commonwealth and being operated by the agents or employees of the State Highway Department. It is claimed that plaintiffs' injuries resulted from the negligent operation of the truck by the employees of the Commonwealth.

Pursuant to and by the authority of that resolution the appellants filed this action in the Jefferson circuit court for the purpose stated above, and alleged in their petition, "and that although said Act (resolution) was enrolled by printing process with a machine rather than in human longhand, same was approved by the Governor of the State of Kentucky on the 12th day of March, 1938, and then accepted by the Secretary of State, and that same is effective as a law of the State of Kentucky. * * *"

They filed a copy of the resolution with their petition.

The Commonwealth by its attorneys demurred to the petition on the ground that the resolution purporting to authorize plaintiffs to sue the Commonwealth was void and of no effect because, as alleged in the petition, the Act was enrolled by printing process and not in human longhand. The court sustained the demurrer and dismissed appellants' petition. Hence, this appeal.

The sole question presented for our consideration is whether or not under the Constitution and Statutes of Kentucky, bills of the General Assembly of Kentucky be enrolled in human longhand rather than by typewriter or other printing process.

The only authorities cited or relied on by the respective parties are sections 56 of the Constitution of Kentucky and Section 1989 of the Kentucky Statutes.

Section 56 of the Constitution reads as follows:

"No bill shall become a law until the same shall have been signed by the presiding officer of each of the two houses in open session; and before such officer shall affix his signature to any bill, he shall suspend all other business, declare that such bill will now be read, and that he will sign the same to the end that it may become a law. The bill shall then be read at length and compared; and, if correctly enrolled, he shall in presence of the house in open session, and before any other business is entertained, affix his signature, which fact shall be noted in the journal, and the bill immediately sent to the other house. When it reaches the other house, the presiding officer thereof shall immediately suspend all other business, announce the reception of the bill, and the same proceeding shall thereupon be observed in every respect as in the house in which it was first signed. And thereupon the clerk of the later house shall immediately present the same to the governor for his signature and approval."

It will be noticed that the word "enrolled" is used in the Constitution, supra, but we find nothing therein remotely indicating the manner of enrollment, that is, whether it shall be in longhand or may be by printing process.

In 20 C. J. page 1265, the word "enroll" is defined as follows: "To register: to enroll" "to enter on the rolls of a court." And on the same page the word "enrollment" is defined as "A record made." And on the same page of the same authority an "enrolled bill" is defined as follows:

"When a bill has been introduced into the Legislature has been finally passed by both houses, signed by the officers of each, signed by the Governor, and filed away by the Secretary of State as the highest evidence of what the law is, it is called an 'enrolled bill.'"

Webster's New International Unabridged Dictionary defines the word "enroll" as follows: "To register or enter in a list or catalogue or on rolls of court; to *engross* or write out in legal form, as on a roll or parchment." (Our italics.)

From the definitions of the word "enroll" it is at

once apparent that it simply means to make a record in writing, but the manner or kind of writing is not specified or in any manner indicated. It is not denied that typwriting and printing are both classed as kinds of writing. It follows that the word "enrolled" as used in the constitution, supra, is too general and indefinite to warrant the conclusion that it was the intention of the writers of the Constitution to require bills of the General Assembly to be enrolled in any specific manner. Therefore, we are impelled to the conclusion that there is no constitutional requirement that bills of the General Assembly shall be enrolled in longhand rather than by a printing process. Any fair, plain, and legible manner of writing is sufficient to satisfy the requirements of the Constitution.

Section 1989 of the Kentucky Statutes reads as follows:

"In addition to such other duties as may be prescribed by each house, it shall be the duty of the chief clerk and assistant clerk to keep a true and correct journal of each day's proceedings; to do all necessary engrossing of bills; to keep the accounts and certify the per diem of members and employees, and to read and compare enrolled bills of the enrolling clerk; to correctly enroll without delay all bills delivered to him for that purpose, and which originate in the house of which he is the enrolling clerk; of the sergeant-at-arms to direct and superintend the pages and the delivery of the mail, and to perform the duties of the door-keeper in his absence; of the door-keeper to superintend and direct the janitor, and to perform the duties of the sergeant-at-arms in his absence; of the janitor to keep the halls and ante-rooms swept and in order, to light the hall and make fires when necessary, to provide water for drinking and toilet purposes, and to perform the duties of cloak-room keeper in his absence; of the cloak-room keeper to take charge of, and safely keep until called for, the cloaks, overcoats, hats, umbrellas, walking canes and other articles placed in his charge by members or employees, and he shall be liable to the owner for any loss caused by his negligence; and of the pages to obey the directions of the sergeant-at-arms, and, during his absence, the directions of the door-keeper."

It is to be noticed that the words "enrolled" and "enrolling" are used in that section of the statutes, but in no different sense than that used in the Constitution, and our conclusions reached as to the meaning of the word "enroll" as used in the Constitution, are likewise applicable to the words "enrolled" and "enrolling" as used in the statutes, supra. Also, the words "engrossing of bills" are used in the statute, supra. It is insisted for the Commonwealth that the word "engross" negatives the idea of any printing process, and as authority for its position the definition of the word "engross" as defined by 1 Bouv. Law Dict., Rawle's Third Revision, page 1040, is relied on and quoted as follows:

"To copy the rude draft of an instrument in a fair, large hand; to write out in a large, fair hand on parchment. The term is applied to statutes which, after being read and acted on a sufficient number of times, are ordered to be engrossed."

The argument is that the words used in the definition of the word "engross," viz., "to write out in a large, fair hand," mean that such writing must be in longhand and precludes the idea that it may be by any printing process. But regardless of precise words or technical language, it is evident that the ultimate purpose and end to be accomplished is that the writing shall be fair, plain and legible so as to be read as easily as is reasonably possible. This end may be accomplished by a printing or engraving process as well as by longhand. Results rather than form being the ultimate purpose or end to be accomplished, technical or exclusive methods are not material, unless some specific method be clearly specified. The definition of the word "engross" as found in Bouvier's Law Dictionary was enunciated in an age and time when longhand was the only method of writing known or in use, but since that time the words "engross," "enroll" and perhaps other similar language, have acquired a more modern meaning, and such things may be done by engraving or other printing process, as well as in longhand, provided, as we have stated, the writing is plain and legible.

There could have been no purpose on the part of the Legislature to require bills to be "engrossed" or "enrolled" by longhand rather than by printing process, unless the former method was deemed to be a safer

guide against errors and/or fraud. While either error or fraud might be committed by either method, yet by no process of reason can we see whereby an error or fraud is more likely to be committed by one method than the other.

Furthermore, it should not be overlooked that the words "engrossing," "enrolled" and "enrolling" all appear in the same section of the statute, which fairly warrant the inference that the word "engrossing" was used alternatively or synonymously with the words "enrolled" and "enrolling." In this connection it may be well to note that in Webster's definition of the word "enroll" the words "to engross" are used as one of or a part of the definition of the word "enroll." Where one word is used to define the meaning of another word, it is clear that the meaning of the two words is the same or substantially the same. In view of the use of these words in the same section of the statute, the definition of the words "enroll" and "engross" and the purposes and ends to be accomplished, we are unable to conclude that the word "engrossing" as used in the statute is authority for the Commonwealth's contention that the statute mandatorily requires the engrossing or enrolling of bills of the General Assembly to be in longhand only.

In an effort to enlighten ourselves on the question, we have consulted the official report of the Constitutional Debates, and find in Vol. 4, page 5911 to 5914, inclusive, an interesting discussion of the subject as to the manner of "enrollment" of the Constitution. But we find nothing in those debates indicating that there was any controversy or question made in regard to whether those proceedings should be enrolled in longhand or by typewriter or other printing process. As we have already noted, the present Constitution was adopted between the years 1890 and 1893 at a time when longhand was the only method of writing in use. It must not be overlooked that the statute, supra, was enacted in the year 1893, at about the time the Constitution was finally adopted, which statute has not since been amended.

Longhand being the only method of writing in general use at the time of the enactment of the statute in question, is another circumstance which fairly warrants the inference that the members of that Legislature did not have in mind typewriting or other printing process,

and, therefore, could have had no reason for intending that the enrolling or engrossing of bills of the Legislature should be restricted to longhand only.

For the reasons stated we are impelled to the conclusion that neither the Constitution nor the statute requires bills of the Legislature to be enrolled in longhand only and that the resolution in question is valid.

Judgment reversed and remanded for proceedings, consistent with this opinion.

The whole court sitting.